UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

Case No. 08-20335

Honorable Nancy G. Edmunds

v.

Robert Trewartha,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND OBTAIN AN EVIDENTIARY HEARING [18]**

**I. Facts and Procedural History**

On February 28, 2007, law enforcement assumed the online persona of a target in a child-pornography investigation. (*See* Government's Resp. to Mot. to Suppress, Docket Text # 19, at Ex. 1, ¶28 (Search Warrant Affidavit)). The email address associated with this persona was "Newbie92883@yahoo.com." (Docket Text # 19, at Ex. 1, ¶28). During the course of the investigation, law enforcement discovered that Newbie92883 had an extensive address book and that he/she was actively trading and distributing child pornography. (Docket Text # 19, at Ex. 1, ¶28). The address book included in its distribution list for child pornography the following email address: "blt2004@gmail.com." (Docket Text # 19, at Ex. 1, ¶28).

On November 11, 2007, law enforcement sent an advertisement from an undercover account to email addresses previously identified in other child-pornography investigations. (Docket Text # 19, at Ex. 1, ¶29). The ad was sent to multiple suspects via the internet,

including blt2004. The advertisement asked whether anyone knew who may have used a sex-tourism website.[1] (Docket Text # 19, at Ex. 1, ¶29). On December 1, 2007, a computer assigned IP address 76.122.178.196 visited the password protected page maintained by the FBI. (Docket Text # 19, at Ex. 1, ¶30). An administrative subpoena was issued on December 12, 2007 to determine the identity of the subscriber that used IP address 76.122.178.196. (Docket Text # 19, at Ex. 1, ¶31). On December 21, 2007, the internet service provider identified defendant Robert Trewartha of Commerce, Michigan as the account holder using IP address 76.122.178.196 on December 1, 2007. (Docket Text # 19, at Ex. 1, ¶32).

On December 28, 2007, the undercover FBI travel website received an email from "billy2009@gmail.com" regarding the advertisement that had been sent in November, 2007. (Docket Text # 19, at Ex. 1, ¶33). There, billy2009 stated he was interested in travel "to the far East Malaysia etc, pls advise where/how long/cost, etc?" (Docket Text # 19, at Ex. 1, ¶33). On January 1, 2008, a response was sent to billy2009 regarding his travel options. (Docket Text # 19, at Ex. 1, ¶34). On January 3, 2008, a subpoena was sent to Google to determine the identity of billy2009. (Docket Text # 19, at Ex. 1, ¶35). The internet service provider furnished the IP address used by billy2009 on January 1, 2008 – 76.122.178.196 – the same IP address used by defendant's pseudonym, blt2004. (Docket Text # 19, at Ex. 1, ¶35-36).

On January 10, 2008, billy2009 sent an email to the FBI undercover travel site stating

---

[1] The travel site referenced in the advertisement was a password protected, sex tourism travel website created and maintained by undercover FBI agents in an effort to thwart child exploitation.

2

that he was interested in a 12-year-old boy. (Docket Text # 19, at Ex. 1, ¶37). Approximately one week later, billy2009 sent another email to the undercover travel site indicating that he had received the advertisement "BL." (Docket Text # 19, at Ex. 1, ¶38). "BL" is slang for "boy love," and is a term used by adults who are interested in having sex with young boys. (Docket Text # 19, at Ex. 1, ¶38). On February 1, 2008, an undercover FBI agent responded to billy2009 and requested the age and other qualities billy2009 would like in a "little friend." (Docket Text # 19, at Ex. 1, ¶39). On February 2, 2008, billy2009 responded and said he was looking for a "boy, white blond prefer, asian next (thin body & cut) best 11 to 13 friendly english speaking ... mostly oral & massage nothing extreme or sadistic anytime is ok as long as where I'm going is warm ... would need at least a month though to get good rate on airfare. where would I stay ... hotel? safe area?" (Docket Text # 19, at Ex. 1, ¶40).

On February 7, 2008, an undercover agent sent a response to billy2009 regarding travel procedure, age range and cost for the boys. (Docket Text # 19, at Ex. 1, ¶41). On February 11, 2008, billy2009 responded and inquired about his total cost. (Docket Text # 19, at Ex. 1, ¶42). On February 12, 2008, an email was sent to billy2009 which provided detailed pricing for the boys, lodging and food. (Docket Text # 19, at Ex. 1, ¶43). On February 19, 2008, billy2009 sent an email indicating that he was getting cold feet, but asking for the time of the trip. (Docket Text # 19, at Ex. 1, ¶44). On February 19, 2008, an undercover agent responded to billy2009 and said it was ok not to travel if he was nervous. (Docket Text # 19, at Ex. 1, ¶45). On February 23, 2008, an email was sent by blt2004 to the undercover travel site. (Docket Text # 19, at Ex. 1, ¶46). There, blt2004 said he was going on a trip soon and he asked for information about someone who had traveled

to the Philippines via assistance from the travel website. (Docket Text # 19, at Ex. 1, ¶46). On February 25, 2008, an undercover agent responded to blt2004 stating that the guy who went to the Philippines had the best time. (Docket Text # 19, at Ex. 1, ¶47).

On March 6, 2008, an undercover agent sent an email to blt2004 asking if he enjoyed his trip. (Docket Text # 19, at Ex. 1, ¶48). The same day, blt2004 responded and said that he had not gone on the trip yet but that he would provide details about it afterwards. (Docket Text # 19, at Ex. 1, ¶48). Billy2009 also sent an email on March 6, 2008 stating, "is this a typical costa Rican? Would the 8th to thwe [sic] 11th work." (Docket Text # 19, at Ex. 1, ¶49). An attachment with an image of three, clothed, prepubescent boys was sent with the aforementioned email. (Docket Text # 19, at Ex. 1, ¶49). The image was sent to the National Center for Missing and Exploited Children. (Docket Text # 19, at Ex. 1, ¶49). The identity of those three boys has not been established but that picture is part of a series that depicts the children in sexually explicit poses. (Docket Text # 19, at Ex. 1, ¶49).

On March 7, 2008, an undercover agent sent an email to billy2009 confirming that the dates from April 8 through 11 were available and requesting his travel information. (Docket Text # 19, at Ex. 1, ¶50). On March 28, 2008, billy2009 responded and said, "I can't pull the trigger, sorry." (Docket Text # 19, at Ex. 1, ¶51). Further investigation revealed that approximately 44 images of suspected child pornography had been sent to blt2004@gmail.com from nikls2006@gmail.com, on or about September 9, 2006. (Docket Text # 19, at Ex. 1, ¶52).

On or about April 8, 2008, a search warrant was applied for and received for Defendant's residence in Commerce, Michigan. The warrant was executed on or about April 9, 2008 and a computer was seized. A search of the computer revealed evidence

which led to the Defendant's indictment on one count of shipment/transportation of child pornography. The Government will seek to introduce the computer, and the evidence contained therein, at trial.

Defendant has filed a motion to suppress evidence, alleging defects in the search warrant affidavit. Defendant further argues that the affidavit contained deliberate falsehoods or material statements of fact made in reckless disregard for the truth.

## II. Analysis

Underlying the analysis of this case is the probable-cause determination. "'Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal citation omitted). Where an affidavit is the basis for a probable-cause determination, that affidavit, "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Reviewing courts recognize that search warrants are normally drafted in the haste and uncertainty of an ongoing investigation. *United States v. Ventresca*, 380 U.S. 102, 108 (1965). Police officers rely on information that must be used quickly. Judgments must be made on the basis of incomplete facts. Given these circumstances, courts provide substantial latitude in reviewing the validity of a search warrant. This deferential review is designed to encourage officers to obtain a warrant before conducting a search. In this regard, the Supreme Court has stated:

> A grudging or negative attitude by reviewing courts toward warrants is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon the interests protected by the Fourth Amendment is less severe than otherwise may be the case. A deferential standard of

> review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.

*Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) (internal citations and quotation marks omitted).

Contrary to Defendant's belief, the affidavit contained probable cause and set forth numerous facts and circumstances regarding suspected criminal activity. The affidavit outlined Defendant's location and documented his sexual interest in children. During an investigation in early 2007, Defendant's email address, blt2004@gmail.com, was discovered in a distribution list for child pornography. Later that year, email communications were sent and received by blt2004 which spoke of his desire to engage in sexual activity with a minor. The emails were captured by an undercover agent who posed in a sex tourism website that Defendant visited. A subpoena for the IP address connected to blt2004 identified Defendant Trewartha as the account user and his residence as the location of the internet connection. That same IP address was used by Defendant's other pseudonym, billy2009@gmail.com. Billy2009 also transmitted and received several emails expressing his interest in paying for sex with a child. Defendant's blt2004 address was also tied to another investigation involving the distribution of child pornography. There, the police discovered that nikls2006@gmail.com had emailed pictures of child pornography to blt2004@gmail.com. Accordingly, probable cause existed to believe evidence of a criminal activity could be found at Defendant's home.

Defendant moves to suppress, or in the alternative for a *Franks* hearing, on the grounds that the search warrant affidavit contained false or misleading statements. Defendant contends that, at most, information regarding the nikls2006 email account

demonstrates an *attempt* to send child pornography to the defendant. However, to warrant a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant must make a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable-cause finding. *Id*. at 171-72. A hearing is required only if the defendant provides the court with a sufficient basis upon which to doubt the truth of the affidavit at issue. Defendant does not meet this standard.

Defendant claims information regarding child pornography images sent by nikls2006 was misleading by representing or suggesting that Defendant actually received the contraband. In *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007), the Fifth Circuit rejected a similar argument as insufficient to defeat probable cause. There, a woman alerted the police when someone with the Yahoo ID "famcple" sent her an internet message containing child pornography. The police forwarded the complaint to the Federal Bureau of Investigation. A subpoena to Yahoo!, Inc., revealed that on the date the child pornography was transmitted, the computer used IP address 24.27.21.6. Through a second subpoena to the internet service provider, the FBI determined that this IP address was assigned to the defendant. As such, a warrant was obtained to search the defendant's residence. Perez argued that the "mere association between an IP address and a physical address is insufficient to establish probable cause." *Id.* at 739. Perez further argued that if he "used an unsecure wireless connection, then neighbors would have been able to easily use [his] internet access to make the transmissions. *Id.* at 740. The Fifth Circuit rejected this argument and held, "though it was possible that the transmissions originated

outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." *See United States v. Grant*, 218 F.3d 72, 75 (1st Cir. 2000) ("even discounting for the possibility that an individual other than [defendant] may have been using his account, there was a *fair probability* that [defendant] was the user and that evidence of the user's illegal activities would be found in [defendant's] home").

The same reasoning applies in the instant case. Though it is possible that Defendant Trewartha may not have received images of child pornography from nikls2006, there remains a fair probability that he did. The affidavit makes clear that Defendant sent and received emails using blt2004. This fact suggests that Defendant's email account functioned properly. As the Sixth Circuit observed, "while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt. *United States v. Strickland*, 144 F.3d 412, 415-16 (6th Cir. 1998). Accordingly, the information contained in the affidavit is more than sufficient to meet this standard.

A line-by-line scrutiny of an affidavit is inappropriate in reviewing a magistrate's decision. *See generally Illinois v. Gates*, 462 U.S. 213 (1983). Rather, "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 974 (6th Cir.

2000) (en banc). Accordingly, the search warrant and evidence seized from the Defendant's residence will not be suppressed.[2]

III. **CONCLUSION**

For the reasons set forth above, this Court DENIES Defendant's motion to suppress evidence and to hold a *Franks* hearing.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 24, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 24, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

---

[2] Defendant's reliance on *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), is misplaced. In *Hodson*, the Sixth Circuit held that an online conversation in which the defendant admitted to having engaged in child molestation was insufficient to establish probable cause to search the defendant's home for evidence of child pornography. *Id.* at 292. By contrast, in this case there is a clear nexus between the evidence establishing probable cause for the warrant -- including the sending of child pornography to Defendant's email address and the inclusion of Defendant's email address on a distribution list for child pornography -- and a warrant to search for child pornography.